Derrick BUSH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0907–CR–682.

Court of Appeals of Indiana.

April 27, 2010.

Barbara J. Simmons, Oldenburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Stephen Tesmer, James E. Porter, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellee.

### OPINION

ROBB, Judge.

*Case Summary and Issue*

■ Derrick Bush appeals his conviction, following a bench trial, of carrying a handgun without a license, a Class A misdemeanor. For our review, Bush raises one issue, which we restate as whether a stop and search of an automobile Bush was driving violated his rights under the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution and the trial court therefore abused its discretion by admitting evidence of the handgun. Concluding the canine sniff that led to the search was not a contemporaneous incident of the initially lawful traffic stop but an unreasonable expansion of it, and as such, the canine sniff and resulting search violated the Fourth Amendment, we reverse.

*Facts and Procedural History* [1]

On March 26, 2009, Bush, a resident of Wisconsin, was driving a rented automobile along northbound Interstate 65 in Marion County, passing through Indiana on his way home to Milwaukee. At approximately 8:45 p.m., Trooper Adam Buell of the Indiana State Police observed Bush driving seventy-seven miles per hour in a fifty-five mile per hour zone. Trooper Buell effected a traffic stop and asked Bush for his driver's license and registration. Bush supplied his Wisconsin driver's license and an automobile rental agreement for registration purposes. When asked where he was coming from and where he was going, Bush replied he was returning to Wisconsin from Georgia after visiting his girlfriend, was in Georgia for only two days, and decided to leave Georgia following an argument with his girlfriend. Trooper Buell regarded these responses as "contradict[ory]" and began to suspect Bush might be carrying illegal substances. Transcript at 9. However, Bush did not make any furtive movements or any "officer safety movements." *Id.* at 18. Trooper Buell then turned his attention to the one passenger in Bush's vehicle and asked the passenger for identification. The passenger provided his name, date of birth, and social security number.

Trooper Buell returned to his police car to check the validity of the information provided by Bush and his passenger.[2] The information from Bush's driver's license matched the "return" Trooper Buell obtained from the State of Wisconsin, but the return supplied two different driver's license numbers and Trooper Buell testified "[n]either return gave me an indication on whether his license was valid or not." *Id.* at 7. Based on the passenger's identifying information, Trooper Buell found the passenger had an outstanding arrest warrant, apparently for a cocaine-related offense. Trooper Buell decided to arrest the passenger and called for an additional unit to help with the arrest. Trooper Dennis Wade, a canine officer, responded to the

---

1. We heard oral argument on March 25, 2010, at Franklin College in Franklin, Indiana. We thank counsel for their presentations and extend our appreciation to Franklin College for its invitation.

2. The passenger was not identified at trial.

request because he "was the closest and the first responder." *Id.* at 10. While waiting for Trooper Wade to arrive, Trooper Buell wrote a traffic ticket for Bush.

Trooper Wade arrived on the scene "[a]s [Trooper Buell] was completing the ticket information for [Bush]." [3] *Id.* at 8. At that time, Bush was in the driver's seat of the automobile and Bush's passenger was in the passenger seat. Trooper Wade and Trooper Buell arrested the passenger, escorting him out of the automobile and handcuffing him, and then asked Bush to step outside of the automobile. However, Bush was not handcuffed or arrested. Then Trooper Wade directed his canine, Mojo, to perform a "free air sniff" around the exterior of the automobile. *Id.* at 23. At this time, Bush was standing near Trooper Buell's police vehicle, which was parked behind Bush's automobile;[4] Trooper Buell was speaking to the passenger regarding why he was under arrest. The canine circled the automobile and thereafter "gave a positive indication for the odor of narcotics emanating from the passenger side." *Id.* at 24.

Trooper Wade informed Trooper Buell the canine had alerted and that he was going to "conduct a probable cause search on the vehicle." *Id.* at 26. Trooper Buell and Trooper Wade searched the automobile and found a .40 caliber handgun in the passenger side glove compartment. Bush admitted the gun was his and did not provide a license to carry it. Aside from a small amount of marijuana residue underneath the passenger seat, no drugs or contraband were found in the automobile.

The State charged Bush with carrying a handgun without a license, a Class A mis-

demeanor. At a bench trial on June 29, 2009, Bush objected to evidence of anything found in the automobile on the grounds that the stop and search violated his rights under the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution. The trial court overruled Bush's objection, found Bush guilty as charged, and sentenced him to two days in jail. Bush now appeals.

### Discussion and Decision

#### I. Standard of Review

In reviewing a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence, we consider conflicting evidence in a light most favorable to the trial court's ruling, and we defer to the trial court's factual determinations unless clearly erroneous. *Meredith v. State,* 906 N.E.2d 867, 869 (Ind.2009). We "consider afresh any legal question of the constitutionality of a search or seizure." *Id.*

#### II. Stop and Search

The Fourth Amendment to the United States Constitution declares, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The purpose of this provision is to protect people from unreasonable search and seizure, and it applies to the states through the Fourteenth Amendment. *Krise v. State,* 746 N.E.2d 957, 961 (Ind.2001). A traffic stop of an automobile and temporary detention of its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S.

---

3. The record is silent regarding the length of time elapsed between Trooper Buell's call for assistance and Trooper Wade's arrival.

4. Trooper Buell testified: "Q. At that time did you have any reason to hold [Bush] or place him under arrest at that time? A. No." *Id.* at 12.

806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). To be valid, a traffic stop must be supported by, at least, reasonable suspicion a traffic law has been violated or other criminal activity is afoot. *Meredith,* 906 N.E.2d at 869. Bush does not dispute he was validly pulled over for a speeding violation. However, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes,* 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Specifically, a traffic stop "that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Myers v. State,* 839 N.E.2d 1146, 1149 (Ind.2005) (quoting *Caballes,* 543 U.S. at 407, 125 S.Ct. 834).

In *Caballes,* the U.S. Supreme Court held the Fourth Amendment does not require reasonable suspicion of criminal activity to justify using a drug-detection dog to sniff an automobile during a legitimate traffic stop. 543 U.S. at 407–10, 125 S.Ct. 834. Accepting the lower court's finding "that the duration of the stop in this case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop," the Court held the canine sniff did "not change the character of a traffic stop that [was] lawful in its inception and otherwise executed in a reasonable manner." *Id.* at 408, 125 S.Ct. 834. However, the Court indicated the Fourth Amendment would be violated if a traffic stop were unreasonably prolonged in order for a canine sniff to be carried out, because absent reasonable suspicion of criminal activity in addition to the traffic violation, the driver would be unlawfully detained at that point. *See id.* at 407–08, 125 S.Ct. 834.

Cases applying *Caballes* fall into two groups, neither of which is on all fours with the facts of this case. In one group of cases, facts in the record and reasonable inferences therefrom showed the canine sniff took place before the purpose of the traffic stop was complete. *See State v. Gibson,* 886 N.E.2d 639, 642 n. 4 (Ind.Ct. App.2008) (noting trial court's unchallenged finding canine unit arrived on the scene while officer was writing defendant a traffic ticket); *Myers,* 839 N.E.2d at 1150 (supreme court accepted trial court's findings that canine sniff began thirteen minutes after vehicle was pulled over and "occurred while the traffic stop was ongoing," that is, while defendant was having the traffic citation explained to him); *see also United States v. Carpenter,* 406 F.3d 915, 916 (7th Cir.2005) (canine unit took no more than five minutes to arrive and did arrive while officer was giving defendant a ticket for evading red light). In these cases, the canine sniff was a proper incident to a valid traffic stop and, as such, was consistent with the Fourth Amendment absent reasonable suspicion. *See* 406 F.3d at 917; 886 N.E.2d at 642; 839 N.E.2d at 1150.

In two other cases, the record was clear that the purpose of the traffic stop was complete before the canine sniff began or that officers significantly prolonged the stop in order for the canine unit to arrive. *See Wells v. State,* 922 N.E.2d 697, 700 (Ind.Ct.App.2010) (canine unit summoned only after officer obtained all information needed to write traffic ticket, and canine unit arrived "nearly twenty minutes after [defendant]'s traffic stop could have been completed and almost forty minutes after it began"); *Wilson v. State,* 847 N.E.2d 1064, 1066 (Ind.Ct.App.2006) (warrant check was completed at 1:58 a.m., warning tickets were written at 2:06 a.m., and canine unit was summoned at 2:15 a.m., only after defendant declined consent to search car). In both cases, this court concluded the canine sniff significantly prolonged the

defendants' detention, which, because it was unsupported by reasonable suspicion of criminal activity, violated the Fourth Amendment. *See Wells,* 922 N.E.2d at 700 ("there does not appear to be any serious dispute that the length of [defendant]'s traffic stop was substantially lengthened by the call for the K–9 and subsequent dog sniff"); *Wilson,* 847 N.E.2d at 1067 ("As the warning tickets were written some time before the dog arrived, it is apparent that [the officer] could have completed the traffic stop sooner than he did").

Bush argues the purpose of the traffic stop was complete before the canine unit arrived and thus the canine sniff of his automobile unreasonably prolonged his detention. Unlike either of the above sets of cases, we are faced with a record that, as the parties agree, is silent regarding the time frame of events. Thus, the burden of proof is potentially outcome determinative. The State conceded at oral argument, and we agree, "[t]he burden is on the State to show the time for the traffic stop was not increased due to the canine sweep." *Wells,* 922 N.E.2d at 700 (quoting *Wilson,* 847 N.E.2d at 1067); *see Bannister v. State,* 904 N.E.2d 1254, 1256 (Ind.2009) (under Fourth Amendment analysis of traffic stop, "[t]he State has the burden to show that under the totality of the circumstances its intrusion was reasonable").

Our review of the record discloses the State failed to present sufficient evidence to support a finding "that the duration of the stop in this case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop." *Caballes,* 543 U.S. at 408, 125 S.Ct. 834. As noted above, the record does not show how much time elapsed between Trooper Buell's call for the assisting unit and Trooper Wade's arrival with his canine. After Trooper Wade's arrival, but before he ran the canine around Bush's car, both officers first effected the arrest of the passenger. Then Trooper Buell dealt with the passenger by explaining to him why he was under arrest. Trooper Buell testified that at the time the canine began circling the car, he did not have any reason to detain Bush or place him under arrest. Thus, the purpose of the traffic stop must have been complete as to Bush, otherwise there would have been an ongoing reason for his detention. Yet the record does not reflect Bush was ever told he was free to leave. Because the State failed to show that either the canine sniff was conducted while the purpose of the traffic stop was ongoing or the canine sniff did not materially increase the duration of the stop, we conclude the canine sniff was not justified as an incident of the stop. Therefore, we must determine whether the officers had reasonable suspicion Bush or his passenger were engaged in criminal activity so as to justify prolonging Bush's detention. *See Wells,* 922 N.E.2d at 700.

■ "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." *State v. Schlechty,* 926 N.E.2d 1, 7, 2010 WL 1078798 at *5 (Ind., Mar.24, 2010) (citing *Illinois v. Wardlow,* 528 U.S. 119, 123–24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). Thus, a reviewing court must examine "the totality of circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Bannister,* 904 N.E.2d at 1255–56 (quotations omitted).

The State does not argue the officers had reasonable suspicion of criminal activity on the part of Bush or the passenger.

Bush and the passenger were at all times cooperative with the officers, made no furtive movements, and did not arouse any concerns for the officers' safety. Although Trooper Buell testified he was suspicious Bush might be transporting illegal substances based upon Bush's inconsistent responses to questioning, he did not point to any specific responses giving rise to this suspicion. Neither did the officers perceive any contents of or odors from Bush's vehicle that might indicate the presence of contraband. Although Trooper Buell testified he was unable to verify whether Bush's driver's license was valid, he did not cite Bush for any license-related violation but only for speeding. This leaves only the outstanding arrest warrant for Bush's passenger as a possible indication the passenger may have been involved in illegal activity. Although the record indicates the warrant was related to a drug offense, there are no facts supporting an inference that offense was recent or bore any connection to the passenger's presence with Bush in the automobile. In this regard, it is relevant Bush was driving, and his passenger was traveling in, a rented automobile. Because the car was a rental, there was less reason to believe any evidence of drug activity on the part of the passenger, which may have long predated Bush's rental of the car, was likely to be found inside. *Cf. Whitney v. State*, 726 N.E.2d 823, 826 (Ind.Ct.App.2000) (court will not impute intent to possess hidden contraband based solely upon possession of borrowed automobile). Further, neither officer testified he believed or had reason to believe contraband was present in the car based on the passenger's arrest warrant.

For these reasons, the officers lacked reasonable suspicion to justify an expansion of the traffic stop beyond the time needed to effect the passenger's arrest, cite Bush for speeding, and make the normal inquiries incident to such a citation. The canine sniff, in the absence of any showing by the State it was a contemporaneous incident to the execution of these purposes, was therefore an unreasonable expansion of the traffic stop and violated Bush's rights under the Fourth Amendment. Because the search of Bush's automobile directly resulted from the unlawful canine sniff, and the State does not argue the search was justified on grounds other than the probable cause the canine sniff generated, the trial court abused its discretion when it admitted evidence of the handgun discovered during the search. As a result, we must reverse Bush's conviction of carrying a handgun without a license.

*Conclusion*

The canine sniff and resulting search of Bush's automobile violated his rights under the Fourth Amendment. Therefore, the trial court abused its discretion when it admitted evidence of the handgun, and Bush's conviction is reversed.[5]

Reversed.

BAKER, C.J., and BAILEY, J., concur.

---

5. Because we reverse on this basis, we need not address Bush's separate argument that the automobile search violated Article 1, section 11 of the Indiana Constitution.