**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JAY M. LEE**
Deputy Public Defender

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL A. SAGE, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1206-PC-266 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-0804-FA-13

**December 13, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Daniel Sage appeals the denial of his petition for post-conviction relief. We affirm.

## Issue[1]

Sage raises one issue, which we restate as whether he received ineffective assistance of counsel.

## Facts

On April 5, 2008, Goshen Police Officer Joshua Havens conducted a traffic stop of the car Sage was driving because a headlight on the vehicle was not working. When Officer Havens approached the vehicle, he observed Sage lean over as if to place something on the floorboard. While talking to Sage, Officer Havens noticed that Sage's hands were shaking and that he appeared extremely nervous. While the stop was in progress, a canine unit was summoned. A dog sniffed the exterior of the car, and it alerted to the presence of narcotics. Methamphetamine eventually was discovered in the car.

On April 9, 2008, the State charged Sage with Class A felony dealing in methamphetamine. On April 14, 2008, attorney R. Brent Zook entered an appearance. On July 24, 2008, Sage pled guilty to Class B felony possession of methamphetamine.

---

[1] In his appellant's brief, Sage appears to raise a free-standing claim of error in addition to the ineffective assistance of counsel claim. In his reply brief, however, he clarifies that he was not raising a free-standing claim and that he was only establishing his ineffective assistance of counsel claim. We therefore only address the ineffective assistance of counsel claim.

Pursuant to the plea agreement, Sage was sentenced to fifteen years with eight years suspended to probation.

On November 28, 2011, Sage filed an amended petition for post-conviction relief alleging that Zook's failure to file a motion to suppress amounted to ineffective assistance of counsel. Following a hearing, the post-conviction court denied Sage's petition. Sage now appeals.

**Analysis**

Sage argues that the post-conviction court improperly concluded that he did not receive ineffective assistance of trial counsel. Generally, the completion of the direct appeal process closes the door to a criminal defendant's claims of error in conviction or sentencing. Pruitt v. State, 903 N.E.2d 899, 905 (Ind. 2009). However, defendants whose appeals have been rejected are allowed to raise a narrow set of claims through a petition for post-conviction relief. Id. (citing Ind. Post-Conviction Rule 1(1)). A post-conviction court must make findings of fact and conclusions of law on all issues presented in the petition. Id. (citing P-C.R. 1(6)). The findings must be supported by the facts, and the conclusions must be supported by the law. Id. "Our review on appeal is limited to these findings and conclusions." Id.

The petitioner bears the burden of proof, and an unsuccessful petitioner appeals from a negative judgment. Id. A petitioner appealing from a negative judgment must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. Id. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without

3

conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion. Id.

Sage argues that Zook's failure to challenge the canine sniff in a motion to suppress amounted to ineffective assistance of counsel. "To establish a post-conviction claim alleging the violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish before the post-conviction court the two components set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." Kubsch v. State, 934 N.E.2d 1138, 1147 (Ind. 2010), cert. denied. First, a defendant must show that counsel's performance was deficient by establishing that counsel's representation fell below an objective standard of reasonableness and that "'counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment.'" Id. (quoting Strickland, 466 U.S. at 687, 104 S. Ct. at 2064). A defendant must also show that the deficient performance prejudiced the defense by establishing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Id. "A petitioner alleging ineffective assistance of counsel in overlooking a defense leading to a guilty plea must show a reasonable probability that, had the defense been raised, the petitioner would not have pleaded guilty and would have succeeded at trial." Helton v. State, 907 N.E.2d 1020, 1024 (Ind. 2009) (citing Segura v. State, 749 N.E.2d 496, 503 (Ind. 2001)).

4

"Because a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place."[2] Meredith v. State, 906 N.E.2d 867, 869 (Ind. 2009). Sage does not assert that the initial stop was improper. Instead, he claims that the canine sniff was an unreasonable expansion of an initially proper traffic stop and that Officer Havens did not have reasonable suspicion to allow the canine sniff.[3]

In Myers v. State, 839 N.E.2d 1146, 1149 (Ind. 2005), our supreme court observed:

> The use of narcotics sniffing dogs by police has recently been addressed by the United States Supreme Court. Deciding "[w]hether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detention dog to sniff a vehicle during a legitimate traffic stop," the Court declared that the use of a narcotics-detection dog "generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 125 S. Ct. 834, 837, 838, 160 L.Ed.2d 842, 846, 847 (2005). It reasoned that

---

[2] Although Sage acknowledges that an analysis under the Indiana Constitution differs from the United States Constitution, he does not provide us with a substantive analysis based on the Indiana Constitution.

[3] To the extent he argues that a canine sniff is only proper if it is supported by reasonable suspicion, Sage relies on Cannon v. State, 722 N.E.2d 881 (Ind. Ct. App. 2000), trans. denied, and Kenner v. State, 703 N.E.2d 1122 (Ind. Ct. App. 1999), trans. denied. In his reply brief, Sage claims that the State is "flatly incorrect" for asserting these cases have been superseded. Appellant's Reply Br. p. 2. To the contrary, in Myers v. State, 839 N.E.2d 1146, 1149 (Ind. 2005), our supreme court recognized, "[t]he effect of Caballes is to supersede the defendant's assertions regarding Cannon and Kenner on this point." Myers, 839 N.E.2d at 1158. Sage also incorrectly suggests that in Bush v. State, 925 N.E.2d 787 (Ind. Ct. App. 2010), clarified on reh'g, we held that "an officer must have a reasonable suspicion of criminal activity before a canine sniff may be conducted." Appellant's Reply Br. p. 5. In Bush, we only considered whether there was reasonable suspicion to prolong Bush's detention to perform a canine sniff after we determined that the State failed to show that the canine sniff was justified as an incident of the stop. Bush, 925 N.E.2d at 791. Thus, we reject Sage's assertion that, "by summoning the canine unit without reasonable suspicion to do so, Officer Havens converted a proper stop into one that no longer was legitimate for purposes of Caballes and its Indiana progeny down to Bush." Appellant's Reply Br. p. 5.

"[o]fficial conduct that does not compromise any legitimate interest in privacy is not a search subject to the fourth Amendment," that "government conduct that *only* reveals the possession of contraband compromises no legitimate privacy interests," and that "the expectation that certain facts will not come to the attention of the authorities is not the same as an interest in privacy that society is prepared to consider reasonable." Caballes, 125 S. Ct. at 837-38, 160 L.Ed.2d at 847 (included quotations omitted). The Court held that "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner . . . ." Caballes, 125 S. Ct. at 837-38, 160 L.Ed.2d at 848. The Court did note, however, that a "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it if prolonged beyond the time reasonably required to complete that mission." Caballes, 125 S. Ct. at 837, 160 L.Ed.2d at 846.

Here, on the issue of whether the seizure was unreasonably prolonged, the post-conviction court concluded:

> 25. In the case currently before the court, there was no evidence presented that the canine sniff at question unreasonably extended the traffic stop of Petitioner's vehicle, or that the traffic stop was completed before the canine sniff commenced. Therefore, the facts of this case did not require that the police officer have independent reasonable suspicion to conduct a canine sniff of Petitioner's vehicle.

App. p. 71.

Sage has not established that the evidence leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. The only admissible evidence presented by Sage at the post-conviction relief hearing was a copy of the Incident Offense Report, Sage's certified driving record, and the chronological case

6

summary.  The Incident Offense Report contains a two-page narrative by Officer Havens.

The narrative provides:

> While on patrol I observed a blue Pontiac 6000, Indiana license plate LO7293 in the area of Plymouth and Lincolnway East.  I had my turn signal to turn north indicated and the driver was in the traffic lane next to me on the south side of the road.  I noticed that the passenger side headlight was not working on the vehicle.  I waited for the vehicle to turn south but it would not go until I went.
>
> I turned north and observed the vehicle slowly pull out from Lincolnway East and Plymouth.  I turned around and activated my emergency lights as the vehicle was turning into the Best Western hotel at 900 Lincolnway East.  The vehicle pulled into a parking space and the driver was bending over at the waist near the floorboard of the vehicle.  It appeared as if he was placing something on the floor of the vehicle.  There was a female on the passenger side and she was not making any movement.
>
> I approached the vehicle and advised the driver that I had stopped him for the headlight being burnt out.  The driver appeared to be extremely nervous.  His hands were shaking, and he was repeating himself.  I asked the driver for his drivers license and registration.  The defendant was identified as Daniel A. Sage.  I then asked the passenger if she had identification, and she said yes.  The passenger was identified as Diana West-Fusaro.  I asked Mr. Sage to exit his vehicle and I showed him the passenger side headlight was burned out.  Mr. Sage said that it wasn't his vehicle and that he did not know that it was burnt out.
>
> Due to the movements that Mr. Sage was making in the immediate area of the vehicle, I had K-9 Officer Tara Powell #140 en route with her K-9 partner Eros for a free air search.  I sat Mr. Sage uncuffed into the back of my police vehicle, and Diana stood outside the vehicle next to Officer Powell's vehicle.
>
> Officer Powell walked her K-9 partner around the vehicle and she said that he had indicated an odor of narcotics in the back seat of the vehicle, and near the front driver side floor board where I had seen Mr. Sage bending over.

Ex. 1 p. 5 (capitalization altered).

7

Based on various computer printouts attached to the Incident Offense Report, Sage appears to suggest that he was issued a citation for the headlight violation and the stop was complete before the K-9 unit arrived. Even if we were to assume that the various printouts establish that Officer Havens issued a citation, it is not clear when the citation was issued in relation to arrival of the K-9 unit and subsequent canine sniff. Quite simply, the limited evidence presented by Sage at the post-conviction relief hearing does not show that the traffic stop was complete when the canine sniff was conducted or that the canine sniff unreasonably prolonged his detention. In the absence of such evidence, Sage has not shown a reasonable probability that counsel overlooked a defense that would have likely changed the outcome of the proceeding. Therefore, the post-conviction court properly denied Sage's petition.

## Conclusion

Sage has not established that the evidence leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. We affirm.

Affirmed.

BAKER, J., and RILEY, J., concur.