## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2018, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

John A. England
Special Assistant to the State
Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Hovis,

*Appellant-Petitioner,*

*v.*

State of Indiana,

*Appellee-Respondent.*

November 21, 2018

Court of Appeals Case No.
18A-PC-718

Appeal from the Allen Superior
Court

The Hon. Frances C. Gull, Judge

Trial Court Cause No.
02D04-0609-PC-101

**Bradford, Judge.**

# Case Summary

In August of 2002, Christopher Hovis and four others abducted Cheri Hartman, and one of Hovis's accomplices shot her to death. The group attempted to burn Hartman's body and were apprehended the next day. In June of 2003, Hovis pled guilty to felony murder, criminal confinement, criminal gang activity, abuse of a corpse, assisting a criminal, and carrying a handgun without a license. Before being sentenced, Hovis's motion to withdraw his guilty pleas was denied, and we affirmed that denial on direct appeal.

In 2016, Hovis filed his petition for post-conviction relief ("PCR"), contending, *inter alia*, that he was entitled to relief because his guilty pleas were not voluntary, knowing, or intelligent and he received ineffective assistance of trial counsel from the attorney who handled his attempt to withdraw his guilty pleas. The post-conviction court denied Hovis's PCR petition in full. Hovis contends that the post-conviction court erred in denying his PCR petition. Because we conclude that Hovis's free-standing claim may not be raised in this proceeding and that he has failed to establish ineffective assistance of trial counsel, we affirm.

# Facts and Procedural History

On the night of August 19, 2002, Hovis, Christine Johnston, Rheann Kelly, Brett Marks, and Ronrico Hatch were drinking when their conversation turned to Hartman. Apparently, Hartman had threatened to "whip" Kelly and had

also made some negative comments about Hatch and Johnston three weeks previously. Appellant's Direct Appeal App. p. 50. Although the group initially planned to go to Hartman's Allen County residence and make her dance naked in the street (and did so), when Barbara Beck came out of her house and said she was going to call the police, they abducted Hartman and drove her to a remote location. Once at the remote location, the naked Hartman was removed from the car and Hatch beat her. At some point, Hatch shot Hartman in the mouth with a handgun belonging to Marks, killing her. Hovis, Hatch, and Johnston left and returned with some gasoline, doused Hartman's body with it, and set the body on fire.

[4] On August 26, 2002, the State charged Hovis with felony murder, Class A felony robbery, Class D felony criminal confinement, Class D felony criminal gang activity, Class D felony abuse of a corpse, Class C felony assisting a criminal, and Class C felony carrying a handgun without a license and alleged that he was a habitual offender. On June 4, 2003, Hovis pled guilty to felony murder, criminal confinement, criminal gang activity, abuse of a corpse, assisting a criminal, and carrying a handgun without a license. Attorney John Bohdan took over Hovis's case on October 14, 2003, and, on that date, Hovis moved to withdraw his guilty pleas. On October 27, 2003, the trial court denied Hovis's motion to withdraw his guilty pleas. On November 24, 2003, the trial court imposed an aggregate sentence of seventy years of incarceration. Hovis appealed, asserting that the trial court had abused its discretion when it denied his motion to withdraw his guilty pleas. On July 20, 2004, we affirmed

the trial court. *See Hovis v. State*, No. 02A03-0401-CR-45 (Ind. Ct. App. July 20, 2004).

[5] On October 13, 2010, Hovis petitioned for leave to file a belated motion to correct error. On October 18, 2010, the trial court granted Hovis' motion and allowed him to file a motion to correct error related to his sentence for assisting a criminal. On November 5, 2010, Hovis filed his belated motion to correct error, which motion was deemed denied after forty-five days. We dismissed Hovis's appeal from this denial, concluding that it was essentially an impermissible, second direct appeal. *Hovis v. State*, 952 N.E.2d 231, 235 (Ind. Ct. App. 2011), *trans. denied*.

[6] On April 8, 2016, Hovis filed his PCR petition, which he amended on December 27, 2016. In the petition, Hovis alleged, *inter alia*, that his guilty pleas were not made voluntarily, knowingly, or intelligently and that he received ineffective assistance of trial counsel from Bohdan. On August 11, 2017, the post-conviction court held a hearing on Hovis's PCR petition and denied it on February 1, 2018.

# Discussion and Decision

[7] The standard of review for appeals from the denial of post-conviction relief is well-settled. Petitioners who have exhausted the direct-appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition. Ind. Post-Conviction Rule 1(1). The petitioner bears the burden of establishing his grounds for PCR by a preponderance of the evidence.

*See* P-C.R. 1(5); *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012). A petitioner who has been denied PCR faces a "rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 170 (Ind. 2001). The post-conviction court's denial of relief will be affirmed unless the petitioner shows that the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). We do not defer to the post-conviction court's legal conclusions but do accept its factual findings unless they are clearly erroneous. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002). The post-conviction process is not a substitute for a direct appeal but merely provides a "narrow remedy for subsequent collateral challenges to convictions." *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000). Issues that were known and available, but not raised, on direct appeal are procedurally defaulted and may not be raised in the post-conviction process. *Bunch v. State*, 778 N.E.2d 1285, 1289 (Ind. 2002). Hovis contends that the post-conviction court erred in denying him relief on the basis that his guilty pleas were not voluntary, knowing, or intelligent and that he received ineffective assistance from Bohdan.

## I. Whether Hovis's Guilty Pleas Were Voluntary, Knowing, and Intelligent

[8] Hovis claims that his guilty pleas were not voluntarily, knowingly or intelligently made and that it was error for the trial court to deny his motion to withdraw them. These claims, however, have already been litigated or are procedurally defaulted. As the post-conviction court and the State both

correctly pointed out below, repetitious litigation of the same dispute is not permitted. *See, e.g.*, *Hughes v. State*, 880 N.E.2d 1186, 1188 (Ind. 2008). If an issue has been raised on direct appeal, it cannot be relitigated in a post-conviction proceeding. *Washington v. State*, 570 N.E.2d 21, 23 (Ind. 1991). The basic claim that Hovis's guilty pleas were not voluntary, knowing, and intelligent was litigated in his direct appeal of 2004 and cannot be relitigated in this post-conviction proceeding. *See id*. Moreover, to the extent that variations on these claims were not raised in Hovis's direct appeal of 2004, they could have been and are therefore procedurally defaulted in any event. *See Bunch*, 778 N.E.2d at 1289.

## II. Whether Hovis Received Ineffective Assistance of Trial Counsel

[9] Hovis contends that he received ineffective assistance from Bohdan, who was appointed to represent him in October of 2003, after he pled guilty but before his sentencing. Hovis claims that Bohdan rendered ineffective assistance during Hovis's attempt to withdraw his guilty pleas. We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Id.* at 687, 694, 104 S. Ct. 2052; *Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind. 1994). [….] Failure to satisfy either prong will cause the claim to fail. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

*French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

Counsel is given wide discretion in determining strategy and tactics, and therefore courts will accord these decisions deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). "A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. "Whether a lawyer performed reasonably under the circumstances is determined by examining the whole of the lawyer's work on a case." *Oliver v. State*, 843 N.E.2d 581, 591 (Ind. Ct. App. 2006), *trans. denied*. We choose to address each of Hovis's specific claims on the basis of whether Bohdan's performance was deficient.

### 1. *Alleged Defense to the Dismissed Habitual Offender Enhancement*

Hovis claims that a primary reason he pled guilty was to avoid the habitual offender enhancement but contends that Bohdan was ineffective in failing to argue that Hovis had a meritorious defense to the enhancement. Hovis contends that he was impermissibly sentenced by a magistrate in one of the convictions underlying the enhancement, causing that conviction to fail to meet

the sequencing requirements of Indiana Code section 35-50-2-8.[1]  The theft

conviction Hovis is referring to was entered after he pled guilty to the charge on

or about December 4, 2000.  At the time, Indiana Code section 33-23-5-9(b)[2]

defined the powers of magistrates, and while we did eventually interpret that

statute as failing to grant magistrates the authority to impose a sentence

following a guilty plea, that did not happen until many years later.  *See Long v.*

*State*, 962 N.E.2d 671, 674 (Ind. Ct. App. 2012) ("Section 33-23-5-9(b) clearly

states that a magistrate, and thus a master commissioner, may enter a final

order, conduct a sentencing hearing, and impose a sentence if he or she has

presided at a criminal trial.  We are not at liberty to conclude that the clear

language of the statute indicating 'criminal trial' really means 'criminal trial or

guilty plea hearing.'"), *trans. denied*.  Hovis cites to no authority that existed in

2003 to support his argument, and we are aware of none.  Moreover, even if we

assume that the sentence in Hovis's prior theft case was somehow invalid, "a

defendant may not wage a collateral attack on the validity of a prior conviction

during a habitual-offender proceeding, *Gross v. State*, 444 N.E.2d 296, 301

---

[1]  Indiana Code section 35-50-2-8 provides, in part, that

> A person has accumulated two (2) or three (3) prior unrelated felony convictions for purposes of this section only if:
>
> > (1) the second prior unrelated felony conviction was committed after commission of and sentencing for the first prior unrelated felony conviction;
> >
> > (2) the offense for which the state seeks to have the person sentenced as a habitual offender was committed after commission of and sentencing for the second prior unrelated felony conviction[.]

[2]  Now at Indiana Code section 33-23-5-5.

(Ind.1983), unless the court documents on their face raise a presumption that the conviction is constitutionally infirm and the apparent constitutional infirmity undermines the integrity and reliability of the guilt determination[,]" *Dexter v. State*, 959 N.E.2d 235, 238 (Ind. 2012), considerations that are not present in this case. We cannot conclude that Bohdan performed deficiently for failing to make an argument for which there was no legal precedent at the time and could not have been brought in this case in any event.

### B. Consecutive Habitual Offender Enhancements

[12] Hovis also contends that he believed that any habitual offender enhancement in this case would have to be run consecutively to a habitual offender enhancement he faced in a contemporaneous case in Whitley County, which we shall assume, *arguendo*, was not the case. Hovis, however, did not testify that his belief was the result of being misled by trial counsel, the trial court, or the prosecutor. A defendant's mere lack of knowledge about matters related to his case is not a basis for invalidating a guilty plea as unintelligent, unknowing, or involuntary. *See State v. Moore*, 678 N.E.2d 1258, 1267 (Ind. 1997) ("Taking this evidence most favorably to Moore, however, it does not establish that he was actually misled into pleading guilty. There is no showing of a promise or commitment upon which Moore relied in entering his plea."); *Harris v. State*, 762 N.E.2d 163, 167–68 (Ind. Ct. App. 2002) (concluding that defendant's mere hope for a certain outcome at sentencing does not render guilty plea involuntary where defendant was not misled by illusory promise), *trans. denied*. Even if we

assume that Hovis's self-serving testimony is true and that his belief was indeed erroneous, this does not establish ineffective assistance of counsel.

### C. Alleged Lack of Unqualified Admission to the Felony Murder Charge

Hovis contends that Bohdan was ineffective for failing to claim that he had not made an unqualified admission to the felony murder charge. It is well-settled in Indiana that "a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time." *Ross v. State*, 456 N.E.2d 420, 423 (Ind. 1983). Hovis's argument is essentially that he unloaded the handgun before Hartman's death in an attempt to prevent its use, which fatally undermines his admission to committing felony murder. The Indiana Supreme Court has stated that "[i]n deciding whether a person may be convicted of felony murder for an allegedly indirect or remote death, we have applied the felony murder statute when the designated felony was 'the mediate or immediate cause' of the death." *Palmer v. State*, 704 N.E.2d 124, 126 (Ind. 1999) (citation omitted).

The record of the guilty plea hearing, however, does not establish that Hovis unloaded the murder weapon, much less that he did so before Hatch shot Hartman with it. The passage that Hovis draws our attention to reads as follows:

> [Trial Court]: Okay. Questions by the State?
>
> [Prosecutor]: I just have … wasn't there at some point that you unloaded the weapon … you had possession of the weapon in Allen County, correct?

[Hovis:]  Yes.

[Prosecutor]:  At the location where Cheri Hartman was murdered?

[Hovis:]  Yes.

[Prosecutor]:  So you had that in your hand.

[Hovis:]  Yes, I did, yeah.

Appellant's Direct Appeal App. pp. 55–56.

First, although the prosecutor refers to unloading the weapon, Hovis never affirms that he did.  Second, even if we assume that Hovis *did* unload the handgun, this passage—at most—tends to establish that Hovis unloaded the handgun "at some point," with no indication that this occurred before Hartman was shot.[3]  The record does not support the factual assertion on which Hovis's entire argument is premised, so it must fail.  Because Hovis has not established that he had a meritorious defense to a charge of felony murder, he has also failed to establish that his trial counsel was ineffective in failing to raise the issue.

### D.  *Alleged Lack of Unqualified Admission to the Abuse of a Corpse Charge*

Hovis contends that Bohdan was ineffective for failing to claim that his guilty plea to the charge of abuse of a corpse was not an unqualified admission of

---

[3] We note that there is no mention anywhere else in the record of Hovis contemporaneously claiming to have unloaded the handgun before Hartman's death, which seems to us like the sort of thing a person in Hovis's position would have mentioned, if true.  Hovis also does not explain why he did not, for example, put the ammunition in his pocket or throw the handgun away from the vehicle if he truly had the intent to prevent the handgun from being used.

guilt, namely that he claimed at the same hearing that he had done it under duress. Hovis indicated that he, Hatch, and Johnston went to purchase gasoline so that they could burn Hartman's body, with no indication that Hovis was forced to do so. Hovis notes that at his guilty plea hearing, he testified that Hatch "pointed the pistol at [him] and told [him] to light [Hartman's body]" on fire, which he then did. Appellant's Direct Appeal App. p. 53. Hovis, however, did not claim at the hearing that he was coerced into burning the body, and his initial response to Hatch's direction was "f*** you[,]" Appellant's Direct Appeal App. p. 53, which is hardly consistent with feeling intimidated or threatened. Hovis admitted to lighting Hartman's body on fire, and the record does not establish that he had a meritorious defense of duress to the crime. Bohdan did not provide deficient performance for failing to raise this claim.

### E. Allegedly Illegal Stop

Hovis contends that Bohdan was ineffective for failing to argue that his guilty pleas should be withdrawn because he was arrested following an allegedly illegal stop on August 20, 2002. Specifically, Hovis contends that police lacked reasonable suspicion to stop the car in which he and his four accomplices were traveling, rendering any subsequently collected evidence inadmissible. During a suppression hearing in Hatch's case conducted two days after Hovis pled guilty, Fort Wayne Police Officer Tara Noll testified that she responded to a report of a disturbance at 1914 Sinclair Street at 11:08 p.m. on August 19, 2002. Officer Noll's testimony continued as follows: Beck told Officer Noll that she had heard a female scream, had stepped outside, and had seen the female who

lived across the street being accosted, abducted, and taken away in a vehicle that Beck described as a dark, mid-sized car with a cargo rack on the back. Officer Noll learned that Hartman was the female who lived across the street by speaking with her roommate and that Hartman had been involved in an altercation with a man named "Rico" some weeks previously, even filing a police report. Petitioner's Ex. 5 p. 12. Officer Noll conveyed that information over her radio and that another officer indicated that "Rico" was possibly Ronrico Hatch. Petitioner's Ex. 5 p. 13. A computer search for Hatch's known associates turned up Hovis, Kelly, Marks, and Johnston. The computer search also revealed that the only automobile associated with any one of the five was a Chevrolet Corsica registered to Kelly that matched the description given by Beck and which had a license plate number of 2EJ948. At 5:30 a.m. on August 20, 2002, an Amber Alert was issued for Hartman, which included a description of Kelly's car and its plate number.

[18] Fort Wayne Police Captain Arthur Norton testified that at approximately 11:20 a.m. on August 20, 2002, he received a telephone call from a woman who identified herself as Hatch's mother indicating that he had just visited her in Detroit, Michigan, and had left in a blue vehicle with Johnston, Hovis, and Marks. Indiana State Police Trooper Richard Crawford testified that he was on duty on August 20, 2002, and knew of the Amber Alert concerning Hartman. At approximately 12:30 p.m., Trooper Crawford became aware that a vehicle matching the description in the Amber Alert had been seen in the area and proceeded to Interstate 69, where he soon spotted a 1992 blue Chevy Corsica

carrying five persons with license plate 2EJ948. The trial court concluded that the stop, detention of the passengers, and investigation were reasonable and denied Hatch's motion to suppress.

[19] "A traffic stop of an automobile and temporary detention of its occupants constitutes a 'seizure' within the meaning of the Fourth Amendment." *Bush v. State*, 925 N.E.2d 787, 789–90 (Ind. Ct. App. 2010) (quoting *Whren v. U.S.*, 517 U.S. 806, 809–10 (1996)). "To be valid, a traffic stop must be supported by, at least, reasonable suspicion a traffic law has been violated or other criminal activity is afoot." *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009)). We agree with the trial court in Hatch's case that the stop of the car was reasonable. Before the traffic stop, the authorities had gathered information indicating that (1) Hartman had been assaulted and then abducted; (2) Hartman had been involved in some sort of continuing dispute with Hatch; (3) the vehicle involved in the abduction closely matched the description of a vehicle owned by Kelly, a known associate of Hatch, Hovis, Johnston, and Marks; (4) Hatch, Hovis, Johnston, and Marks were seen in Detroit the morning after Hartman's abduction, implying flight from Allen County; and (5) Kelly's vehicle was seen returning from the direction of Detroit later that day on Interstate 69. Given that persons had assaulted and abducted Hartman the night before, and that there was some reason to believe those persons were associates of Kelly and were in her vehicle, Hovis has failed to show that the stop was illegal. Contrary to Hovis's contention, the information known to the authorities was more than

sufficient to generate reasonable suspicion that criminal activity was afoot.[4] Bohdan was not ineffective for failing to argue that the State's evidence collected against Hovis should have been suppressed.

### F. Coercion to Plead Guilty

[20] Finally, Hovis contends that Bohdan was ineffective for not arguing that he was threatened into pleading guilty by Fort Wayne Police Detective Garry Hamilton. Even if we were to assume that Hovis was threatened into pleading guilty (which we do not), Bohdan testified that he could not recall Hovis telling him of any such threats. The post-conviction court was entitled to believe Bohdan's testimony on this point. Bohdan's performance cannot have been deficient for failing to raise a claim based on factual allegations of which Hovis had not made him aware, even if they did occur.

# Conclusion

[21] To the extent that Hovis makes free-standing claims that his guilty pleas were not voluntary, knowing, or intelligent, or that the trial court erroneously accepted his guilty pleas, those arguments have either already been litigated or are procedurally defaulted. As for Hovis's claim that he received ineffective

---

[4] Hovis's argument relies in large part on the fact that the probable cause affidavit issued on August 26, 2002 (six days after the stop), indicates that the police obtained the license plate number from Beck instead of their computer system. We fail to see how a probable-cause affidavit filed six days after a traffic stop, even if it is, as Hovis puts it, "[f]alse" and "ficticious[,]" Appellant's Br. p. 53, could somehow retroactively render the stop invalid.

assistance of counsel, we conclude that his counsel was not ineffective for failing to (1) claim that his pleas to felony murder and abuse of a corpse were not unequivocal expressions of guilt, (2) inform him or argue that he had meritorious defenses to several or all of his charges, and (3) argue that his guilty pleas were coerced by threats from a police detective. The post-conviction court did not err in denying Hovis's PCR petition.

[22] We affirm the judgment of the post-conviction court.

Bailey, J., and Mathias, J., concur.