v.

STATE of Indiana, Appellee–Petitioner.

No. 47A05–9912–JV–542.

Court of Appeals of Indiana.

Sept. 25, 2000.

Michelle L. Woodward, Haury & Woodward, Bedford, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

DARDEN, Judge

*STATEMENT OF THE CASE*

D.K. appeals his adjudication as a delinquent child for having committed an act which would be a class B misdemeanor if committed by an adult, namely the possession in his vehicle of a police radio.[1]

We reverse.

---

1. *See* Ind.Code § 35–44–3–12.

*ISSUE*

Whether the trial court erroneously denied D.K.'s motion to suppress.[2]

*FACTS*

Around four o'clock in the morning on January 30, 1999, Officer Michael Johnson of the Bedford Police Department observed seventeen year old D.K. drive his vehicle through an intersection without stopping, as required by a stop sign at the intersection. Officer Johnson then followed D.K. and determined that he was exceeding the speed limit. Officer Johnson activated his emergency lights and stopped D.K for having disregarded the stop sign and for speeding.

Officer Johnson approached D.K.'s car and asked D.K. for his license and registration. According to Officer Johnson, D.K. initially refused to roll down his window. After Officer Johnson knocked on the window "again," (R. 67), D.K. rolled down the window and provided the license and registration. Officer Johnson noted that D.K. had two passengers – one in the passenger seat and one in the back seat. Both passengers avoided eye contact with Officer Johnson. When Officer Johnson returned to his patrol car, D.K. and both passengers repeatedly turned and looked back at him. As Officer Johnson was "running a check" on the license and registration, he received a radio message from the county sheriff's department advising that D.K. had a police radio in his vehicle.

Officer Johnson went back to D.K.'s vehicle and advised D.K. that he would not cite him and gave him a verbal warning. Then, because Officer Johnson "wanted to see a response" from D.K., (R. 71), he asked him "if he had any illicit narcotics or weapons within the vehicle at that time and if I could conduct" a search of D.K.'s vehicle. (R. 58). D.K. "said he didn't have any on him but he wasn't sure if his friends that were with him had any on them," (R. 59), and Officer Johnson "would

need a search warrant for that." (R. 59). At that point, Officer Johnson "believe[d] there [was] something awry inside this vehicle." (R. 71–72).

Therefore, Officer Johnson, a certified canine officer, retrieved his service canine, "Ingus," from the squad car and walked it around D.K.'s car twice. Each time, Ingus alerted (by sitting) at the driver's door. Officer Johnson advised D.K. that the dog's alerts "established probable cause for our entry into his vehicle without his consent or a search warrant due to the . . . exigent circumstances exception pertaining to vehicle stops because it was mobile." (R. 61). A second officer from the Bedford Police Department, Major Steven Haley, had arrived by then. Based upon the alerts by Ingus, Officer Johnson and Major Haley searched the inside of D.K.'s car. A police scanner radio was found under the console between the driver's seat and the passenger seat. However, no drugs or weapons were found in the car.

D.K. was alleged to be a delinquent child for having committed an act, which if committed by an adult, would be the class B misdemeanor of unlawful possession of a police radio. D.K. filed a motion to suppress, claiming the seizure of the police radio "was a direct result of an illegal search and seizure of [his] vehicle." (R. 22). After hearing testimony as to the foregoing facts, the trial court denied D.K.'s motion, holding that Officer Johnson "had a valid reason to stop [D.K.]" and a canine sweep around a vehicle "is not a search." (R. 99). The trial court then proceeded to find that D.K. had committed the act of unlawful possession of a police radio, a class B misdemeanor if committed by an adult.

*DECISION*

▬ As we recently explained,

The Fourth Amendment to the United States Constitution guarantees " 'the right of the people to be secure in their

2. We heard oral argument in this case on August 30, 2000, in Indianapolis.

persons ... against unreasonable search and seizures.'" *Parker v. State,* 697 N.E.2d 1265, 1267 (Ind.Ct.App.1998). Generally, a search must be reasonable and conducted pursuant to a properly issued warrant. *Id.* When a search is conducted without a warrant, the State bears the burden of proving the search was justified under one of the limited exceptions to the warrant requirement. *Id.* Pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 911 (1968), police may – without a warrant – stop an individual for investigatory purposes if, based upon specific, articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Id.* at 27, 88 S.Ct. 1868. Such reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *Id.* We consider the totality of circumstances in determining whether the police had reasonable suspicion to believe there was criminal activity afoot. *Carter v. State,* 692 N.E.2d 464, 467 (Ind.Ct.App.1997).

*Webb v. State,* 714 N.E.2d 787, 788 (Ind.Ct. App.1999). On appeal of a trial court's ruling on a motion to suppress, we consider *de novo* whether such "reasonable suspicion" existed. *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *see also Burkett v. State,* 691 N.E.2d 1241, 1244 (Ind.Ct.App. 1998), *trans. denied.*

■ The United States Supreme Court has held that "stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention is quite brief." *United States v. Hill,* 195 F.3d 258, 263 (6th Cir. 1999), *cert. denied,* (citing *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). An ordinary traffic stop is akin to an investigative detention, and the principles announced in *Terry* apply. *Id.* at 264. The *Terry* investigative

detention should "last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Therefore, once the purpose of the initial traffic stop has been completed, an officer cannot "further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Mesa,* 62 F.3d 159, 162 (6th Cir.1995).

■ D.K. directs us to *Cannon v. State,* 722 N.E.2d 881 (Ind.Ct.App.2000), *trans. denied,* wherein we held that without more, mere "nervousness" exhibited by a driver upon a traffic stop does not create the requisite level of reasonable suspicion for a law enforcement officer to detain a vehicle for a canine sniff test. The State responds by noting that more than D.K.'s nervousness gave rise to Officer Johnson's suspicions. It refers us to the following facts: commission of traffic offenses, time of night and D.K.'s juvenile status, initial failure to roll down the window, the occupants' nervousness, failure to make eye contact and turning to look at the officer, and the information about D.K.'s possession of a police radio in the vehicle.

■ We consider these facts in turn. We note that Officer Johnson did not cite D.K. for the traffic offenses; nor did he cite him for a curfew violation. As to the initial failure to roll down the window, subsequently doing so should have dispelled any suspicion that this act would reveal the odor of narcotics. Officer Johnson testified that most people are nervous during a traffic stop. As to the failure to make eye contact, it seems likely that direct eye contact by all the occupants could also have been interpreted negatively by the officer—as exhibiting hostility. As to the occupants' turning around to look at him, no suggestion has been made as to how this indicates the likelihood of illegal activity. Finally, Officer Johnson testified that the information about a police radio in D.K.'s car had "no[thing] whatsoever" to

do with his asking D.K. about weapons or narcotics in the vehicle. (R. 70). Upon reviewing these facts articulated by Officer Johnson, facts existing before the officer informed D.K. that there would be no traffic citation, we do not find them to create a reasonable suspicion of criminal activity to support continued detention for investigation.

Subsequent to Officer Johnson's giving D.K. a verbal warning, the only new circumstance that could have led him to have a reasonable suspicion thereafter (having found no basis for such reasonable suspicion upon the facts existing prior thereto) is exactly what Officer Johnson said constituted the basis for his having conducted the canine sniff: D.K.'s answer to his inquiry about whether drugs or weapons were present in the vehicle and whether he could conduct a search. D.K. denied having any drugs or weapons, said he did not know whether his friends had weapons or narcotics, and told Officer Johnson he would need a search warrant. D.K. essentially refused to consent to a voluntary search, and such cannot serve as the basis for a reasonable suspicion that criminal activity was taking place – i.e., that a *Terry* investigation was warranted.

■ The refusal to consent voluntarily to a search cannot be "considered in determining reasonable suspicion." *United States v. Hunnicutt*, 135 F.3d 1345, 1350 (10th Cir.1998) (citing *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 2387–88, 115 L.Ed.2d 389 (1991)); *Royer*, 103 S.Ct. at 1324; *Brown v. Texas*, 443 U.S. 47, 51–52, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979); *United States v. Manuel*, 992 F.2d 272, 274 (10th Cir.1993). As the Tenth Circuit commented, any other rule "would make mockery of the reasonable suspicion" requirement by letting a "citizen's insistence that searches and seizures be conducted in conformity with constitutional norms ... create the suspicion or cause that renders their consent unnecessary." *Id.* at 1351.

Officer Johnson testified that the law permits him to conduct a canine search around a car at his discretion. (R. 71). The trial court denied D.K.'s motion to suppress because the initial traffic stop was valid and a canine sweep around a vehicle "is not a search." (R. 99). Both of the foregoing conclusions are impermissibly broad. As the State notes, despite the holding of *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), that a canine sweep is not a search within the meaning of the Fourth Amendment, *Hill*, 195 F.3d at 270, requires that upon the completion of a traffic stop, the officer must have reasonable suspicion of criminal activity in order to proceed thereafter with an investigatory detention. Thus, the critical fact is whether at the time of the continued detention there is reasonable suspicion.[3]

In *Kenner v. State*, 703 N.E.2d 1122, 1127 (Ind.Ct.App.1999), *trans. denied*, we held that the officer's suspicion of illegal activity aroused by the detection of the odor of marijuana continued after (1) the speeding citation was written, and (2) the motorist was informed that the traffic stop was over. Therefore, the earlier detection of that odor provided the reasonable suspicion that the vehicle contained narcotics, allowing a detention for a canine sniff after the completion of the traffic stop. *Id.* at 1125. In *Cannon*, we expressly held that *Terry*-level reasonable suspicion was a necessary predicate to a canine sniff after a traffic stop.

Here, the facts articulated by Officer Johnson for detaining D.K. after giving him a verbal warning for the traffic of-

3. Although federal law refers to conducting a canine sniff of a vehicle without individualized reasonable suspicion of drug-related activity, it does so in the context of a "lawfully detained" or "legitimately detained" vehicle. *United States v. Morales–Zamora*, 914 F.2d 200, 205 (10th Cir.1990); *United States v. Hunnicutt*, 135 F.3d 1345, 1350 (10th Cir. 1998). Where the traffic stop has been concluded and there is an absence of reasonable suspicion at that point, there is no longer a legal detention.

fenses (the purpose of the stop) consist of no more than "unparticularized suspicions," *see Webb*, 714 N.E.2d at 789, and a refusal to voluntarily consent to a search cannot be considered to constitute grounds for suspicion. *See Hunnicutt*, 135 F.3d at 1350. The facts articulated do not form the basis for *Terry*-level reasonable suspicion to detain D.K. further in order to conduct a canine sniff of his vehicle. Therefore, the sniff of D.K.'s vehicle was unreasonable. *See Webb*. D.K.'s motion to suppress admission of the police scanner found as a result thereof should have been granted.

We reverse.

MATTINGLY, J. and BROOK, J., concur.