Joseph E. WILSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 30A01–0508–CR–393.

Court of Appeals of Indiana.

May 26, 2006.

James W. McNew, Allen Wellman McNew, Greenfield, for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Joseph E. Wilson appeals the denial of his motion to suppress evidence. He argues his rights under the Fourth Amendment of the United States Constitution and under Article I, § 11 of the Indiana Constitution were violated when police officers detained him after his traffic stop while a drug-sniffing dog was brought to the scene.

We reverse.

### FACTS [1] AND PROCEDURAL HISTORY

During the early morning hours of March 9, 2005, Officer Eric Fields of the Greenfield Police Department noticed Wilson in a car parked in a CVS parking lot. Wilson and his companion were watching the patrol car. Wilson drove to a Gas America parking lot, and Officer Fields noticed Wilson watching him as Wilson cleaned his windshield. Officer Fields continued his patrol. About twenty minutes later he returned to the Gas America station, where Wilson and his companion were still parked. Officer Fields again noticed Wilson and his companion watching him.

Officer Fields drove to a nearby parking lot and turned out his headlights so he could watch Wilson's car. Wilson drove out of the parking lot and accelerated very quickly to a high rate of speed. Wilson's license plate light was out, and Officer

1. There was no testimony presented at the suppression hearing. Instead, the parties stipulated to the facts in the Probable Cause Affidavit.

Fields stopped Wilson's car. During the traffic stop, Wilson was "very nervous." (App. at 19.) His "hands were shaking" and he was "having trouble getting his license and vehicle registration." (*Id.*) Officer Fields noted Wilson paused often when speaking.

After obtaining Wilson's license and registration, Officer Fields returned to his vehicle to run license and warrant checks on Wilson and to write warning tickets for the license plate light and speeding violations. Wilson's license check was returned at 1:58 a.m. and reflected a misdemeanor drug violation. The time indicated on the warning tickets Officer Fields prepared was 2:06 a.m.

Officer Fields spoke with his riding partner, Patrolman Moore, about Wilson and his companion, then the officers asked Wilson to step out of his car. Officer Fields asked if "there was anything in the vehicle we needed to know about like weapons or illegal narcotics," and Wilson replied there was not. (*Id.*) Officer Fields then asked Wilson whether he had any weapons on him, and Wilson replied he had a knife.

Patrolman Moore patted down Wilson, and Wilson told the officers he had $4,000.00 in cash in his pocket. Officer Fields asked if he could search Wilson's car, and Wilson declined to permit the search. Officer Fields returned to his patrol car and at approximately 2:15 a.m. called for backup and for a unit with a drug-sniffing dog.

Officer Michael Noble arrived shortly thereafter and after speaking with Officer Fields, spoke with Wilson and his companion. Officer Noble heard "conflicting stories" from Wilson and his companion, and noted Wilson was "very nervous." (*Id.* at 24.) Wilson mentioned several times that he was cold, but declined several offers by Officer Noble to get Wilson's jacket out of

his car. Officer Noble told Wilson they were waiting for Officer Fields to finish writing the warning tickets and "were also waiting on dispatch to advise us on their warrant checks." (*Id.* at 25.)

The dog arrived as Officer Fields gave Wilson the warning tickets. The dog alerted on two different areas of the vehicle, and the officers found narcotics and a gun. Wilson was arrested and charged with numerous offenses, including dealing in methamphetamine, a Class A felony.[2] The trial court denied Wilson's motion to suppress the evidence police seized from his car.

## DISCUSSION AND DECISION

 We review the denial of a motion to suppress evidence in a manner similar to allegations of insufficient evidence. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Bocko v. State,* 769 N.E.2d 658, 664 (Ind.Ct.App.2002), *reh'g denied, trans. denied* 783 N.E.2d 702 (Ind. 2002). However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, in reviewing a denial of a motion to suppress, we must also consider the uncontested evidence most favorable to the defendant. *Id.* Trial courts have wide latitude in weighing the probative value of evidence against the danger of unfair prejudice, and we review that determination for abuse of discretion. *Ingram v. State,* 715 N.E.2d 405, 408 (Ind.1999).

Wilson argues his detention during the lawful traffic stop was longer than necessary to effectuate the purpose of the traffic stop, and was designed to stall until the drug-sniffing dog could arrive. The United States Supreme Court recently held "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a

**2.** Ind.Code § 35–48–4–1.

substance that no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes,* 543 U.S. 405, 410, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). A trooper stopped Caballes for speeding. When the trooper reported the stop to dispatch, another unit with a drug-sniffing dog overheard the call and drove to the site of the stop. While the first trooper wrote Caballes a warning ticket, the second trooper walked the dog around Caballes' car. The dog alerted on the car and narcotics were found. The Supreme Court observed the dog sniff was performed on the exterior of a car and held "[a]ny intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement." *Id.* at 409.

Our Indiana Supreme Court followed *Caballes* in holding a dog sniff, if reasonable, did not violate the United States or Indiana Constitutions. *Myers v. State,* 839 N.E.2d 1146 (Ind.2005). However, *Myers* did not address whether the dog sniff improperly prolonged Myers' detention. Police initiated Myers' traffic stop at 1:19 a.m. and the dog sniff began at 1:32 a.m. At the time of the dog sniff, the officer was explaining the traffic citation to Myers and "had not completed the traffic stop prior to the time of the canine sweep of the vehicle." *Id.* at 1150.

■ The *Caballes* Court noted not all "dog sniff" situations are the same: "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." 543 U.S. at 407, 125 S.Ct. 834. Specifically, "a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.*

■ The State argues Wilson's detention was proper as a *Terry* stop. Police

may briefly detain an individual for investigatory purposes if, based on specific and articulable acts, the officer has a reasonable suspicion criminal activity "may be afoot." *Sullivan v. State,* 748 N.E.2d 861, 865 (Ind.Ct.App.2001) (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). While a dog sniff is not a search, on the completion of a traffic stop an officer must have reasonable suspicion of criminal activity in order to proceed thereafter with an investigatory detention. *Bradshaw v. State,* 759 N.E.2d 271, 273 (Ind.Ct.App.2001). The critical facts in determining whether a vehicle was legally detained at the time of the canine sweep are whether the traffic stop was concluded and, if so, whether there was reasonable suspicion at that point to continue to detain the vehicle for investigatory purposes. *Id.* at 273–74. The burden is on the State to show the time for the traffic stop was not increased due to the canine sweep. *Id.* In assessing whether a detention is too long in duration, we examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. *Id.*

The record before us reflects Wilson's warrant check came back at 1:58 a.m., indicating the police must have stopped him before that time. The time on the warning tickets was 2:06 a.m. Officer Fields did not call for a drug-sniffing dog until Wilson refused to consent to a search. The affidavit to which the parties stipulated does not indicate when the drug-sniffing dog arrived. Other officers arrived at the scene at 2:15 a.m. and continued to speak to Wilson. As the warning tickets were written some time before the dog arrived, it is apparent that Officer Fields could have completed the traffic stop sooner than he did.

The State contends:

Officer Fields' report indicates no fewer than six specific facts that supported his

reasonable suspicion of Defendant's criminal activity over the course of their confrontation that early morning: [1] Defendant was closely watching police activity not merely just once but on three separate occasions before police even confronted him; [2] Defendant sped off at a high rate of speed; [3] Defendant had shaking hands; [4] Defendant had "several" prior offenses for possession; [5] Defendant gave contradictory answers when asked about whether he possessed weapons; [6] Defendant possessed $4,000.00 in cash at two a.m.

(Br. of Appellee at 7–8.)

We note that Officer Fields' report does not indicate Wilson gave contradictory answers about weapons. Officer Fields wrote:

> We then returned to the vehicle and I asked Mr. Wilson to step out and speak with me. While talking to him I asked if there was anything in the vehicle we needed to know about like weapons or illegal narcotics and he stated no, I then asked him if he had any weapons on him and he stated he had a knife in his pocket.

(App. at 19.) The officer's first question was whether there were weapons in the car. As Wilson was not in the car when he was questioned, a knife in his pocket could not have been included in his first negative answer. There is nothing "contradictory" about Wilson's statements, and we admonish the State to refrain from so mischaracterizing the record.

In *D.K. v. State*, 736 N.E.2d 758 (Ind.Ct. App.2000), police stopped D.K., a juvenile driver, for speeding and disregarding a stop sign. The officer thought D.K. and his passengers acted suspiciously, and D.K. initially refused to roll down his window. The passengers avoided eye contact with the officer. An officer advised D.K. that he would not cite him and gave him a verbal warning. The officer then asked if there was any contraband in the car. He asked to search the vehicle and D.K. did not consent to the search. After D.K.'s refusal to consent, the officer retrieved his dog from the patrol car and conducted a dog sniff around the vehicle. We noted the purpose of the traffic stop was fulfilled when the officer gave D.K. the verbal warning, and held the actions of D.K. and his passengers did not provide the officer with reasonable suspicion D.K. was engaging in criminal activity. *Id.* at 762–63.

Similarly, in the present case, the circumstances of Wilson's traffic stop did not give rise to reasonable suspicion. A person's nervousness when stopped by the police at 2:00 a.m. is understandable, as is watching a passing patrol car. Carrying $4,000.00 in cash is unusual, but it is not illegal. Officer Fields did not have reasonable suspicion to detain Wilson after the traffic stop was concluded and until the arrival of a drug-sniffing dog that was summoned only after Wilson declined to consent to a search. The trial court erred in denying Wilson's motion to suppress.

Reversed.

CRONE, J., and FRIEDLANDER, J., concur.