**FOR PUBLICATION**



FILED
Nov 13 2013, 7:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MICHAEL H. HAGEDORN**
Hagedorn Law Office
Tell City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

STATE OF INDIANA,                )
                                 )
    Appellant-Plaintiff,         )
                                 )
        vs.                  )    No. 62A01-1303-CR-108
                                 )
MOLLY GRAY,                      )
                                 )
    Appellee-Defendant.          )

INTERLOCUTORY APPEAL FROM THE PERRY CIRCUIT COURT
The Honorable M. Karen Werner, Judge
Cause No. 62C01-1208-FD-545

**November 13, 2013**

**OPINION – FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Cannelton Police Department Officer Micah Jackson initiated a traffic stop of Appellee-Defendant Molly Gray, during which he conducted a free-air canine sniff around Gray's vehicle. After the canine alerted to the presence of contraband, Officer Jackson searched the vehicle and found a bag of methamphetamine. Appellant-Plaintiff the State of Indiana charged Gray with Class D felony possession of methamphetamine. (App. 1, 10) Gray filed a motion to suppress the evidence, arguing that (1) the initial stop was pretextual and without cause and (2) that Officer Jackson lacked reasonable suspicion to delay the traffic stop in order to conduct a canine sniff, in violation of the Fourth Amendment. (App. 2, 25) The trial court granted the motion, and the State now appeals. Without addressing the validity of the initial stop, we conclude that the free-air canine sniff was not conducted incidental to the traffic stop and so required reasonable suspicion to justify increasing the duration of the stop. Finding that Officer Jackson lacked reasonable suspicion, we hold that the seizure was a violation of the Fourth Amendment and that the trial court did not err in suppressing the evidence. We affirm.

## STATEMENT OF THE FACTS

At approximately 3:00 a.m. on August 13, 2012, Officer Jackson witnessed a white van, operated by Gray, fail to signal while making a right-hand turn. (Tr. 7) Due to the early morning hour, Officer Jackson began to follow the van, watching for signs of impairment. (Tr. 7) After pacing the van for roughly a mile, Officer Jackson estimated Gray's speed to be approximately sixty-three or sixty-four miles per hour. (Tr. 8, 10) Officer Jackson did not use a radar to determine Gray's speed but had received

2

certification to estimate speed by pacing vehicles. (Tr. 23) Upon entering a fifty-five-mile-per-hour zone, Officer Jackson noticed Gray was traveling faster than the posted speed limit and initiated a traffic stop. (Tr. 10, 24) Officer Jackson radioed dispatch at 3:04 a.m. to notify them of the stop. (Tr. 10, 28)

Officer Jackson approached the vehicle; informed Gray of the reason for the stop; and asked for her driver's license, registration, and proof of insurance. (Tr. 11) Officer Jackson returned to his car, placed Gray's information on the seat and began removing his canine, Erik, from the back of the car with the intention of conducting a free-air sniff of Gray's vehicle. (Tr. 11) Officer Jackson explained in his testimony that he decided to use the drug-detection dog because he "actually received information from another officer, actually employed by the Tell City Police Department, just I believe it was the day before, night before … that [Gray] had been involved in em the activity of illegal narcotics." Tr. p. 12. Officer Jackson had no knowledge regarding the specifics or source of the information. (Tr. 12, 26)

Officer Jackson chose not to run the standard license/warrant check or report Gray's information to dispatch prior to the free-air sniff because of Gray's connection to local law enforcement. Specifically, Gray's brother-in-law is a Perry County Sheriff's Deputy and Gray's sister is employed as a dispatcher for the Tell City Police Department. Both siblings were working at the time of the stop and Officer Jackson feared the siblings might interfere in the investigation. (Tr. 12-13, 26)

After removing Erik from the patrol car, Officer Jackson allowed him to "use the bathroom for just a brief amount of time" before beginning the sniff of Gray's vehicle.

3

Tr. p. 14. Officer Jackson walked Erik around Gray's vehicle twice and Erik alerted to the presence of narcotics on the driver's side front window and the rear passenger side door. (Tr. 16-18) Officer Jackson then rewarded Erik by playing with him for a couple minutes before returning him to the squad car. (Tr. 32-33) Officer Jackson estimated that the canine sniff process lasted approximately one-and-a-half to two minutes. (Tr. 18) Officer Jackson reported to dispatch at 3:10 a.m. that Erik had alerted to drugs in Gray's vehicle and that Jackson was going to search the vehicle. (Tr. 28) Officer Jackson then conducted a search of the vehicle and found a small clear plastic baggie located under a floor board containing a white substance which was later identified as methamphetamine. (Tr. 19) Officer Jackson ran the routine checks on Gray's license and registration after the search of her vehicle was completed. (Tr. 29) The record is silent as to whether Officer Jackson cited Gray for a traffic violation.

## DISCUSSION AND DECISION

### Standard of Review

In reviewing a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence, we consider conflicting evidence in a light most favorable to the trial court's ruling, and we defer to the trial court's factual determinations unless clearly erroneous. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). However, we will "consider afresh any legal question of the constitutionality of a search or seizure." *Id.*

Gray contends that both the initial stop and the subsequent search of her vehicle were invalid. We conclude that even assuming the initial stop was valid, the subsequent

4

search was not. We focus our analysis solely on the search.

## Reasonable Suspicion to Delay Traffic Stop

In *Illinois v. Caballes*, the United States Supreme Court addressed "whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." 543 U.S. 405, 407 (2005). The Court held that articulable suspicion is not required when a dog sniff is conducted simultaneously to a traffic stop so long as the traffic stop is not extended beyond the time necessary to issue a warning ticket and to conduct ordinary inquiries incident to such a stop. *Id*. at 409.

We recently addressed the *Caballes* decision in *Bush v. State*, and the same course of analysis is appropriate in the present case. *Bush v. State*, 925 N.E.2d 787, *decision clarified on reh'g*, 929 N.E.2d 897 (Ind. Ct. App. 2010). In *Bush*, we addressed when reasonable suspicion is required for a canine sniff:

> Because the State failed to show that either the canine sniff was conducted while the purpose of the traffic stop was ongoing or the canine sniff did not materially increase the duration of the stop, we conclude the canine sniff was not justified as an incident of the stop. Therefore, we must determine whether the officers had reasonable suspicion.

*Id* at 791. In *Bush*, we summarized several Indiana dog sniff cases which are analogous to the present case and which we outline below for context.

> Cases applying *Caballes* fall into two groups, neither of which is on all fours with the facts of this case. In one group of cases, facts in the record and reasonable inferences therefrom showed the canine sniff took place before the purpose of the traffic stop was complete. *See State v. Gibson*, 886 N.E.2d 639, 642 n.4 (Ind. Ct. App. 2008) (noting trial court's

5

unchallenged finding canine unit arrived on the scene while officer was writing defendant a traffic ticket); [*Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005)] (supreme court accepted trial court's findings that canine sniff began thirteen minutes after vehicle was pulled over and "occurred while the traffic stop was ongoing," that is, while defendant was having the traffic citation explained to him); *see also United States v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005) (canine unit took no more than five minutes to arrive and did arrive while officer was giving defendant a ticket for evading red light). In these cases, the canine sniff was a proper incident to a valid traffic stop and, as such, was consistent with the Fourth Amendment absent reasonable suspicion. *See* 406 F.3d at 917; 886 N.E.2d at 642; 839 N.E.2d at 1150.

In two other cases, the record was clear that the purpose of the traffic stop was complete before the canine sniff began or that officers significantly prolonged the stop in order for the canine unit to arrive. *See Wells v. State*, 922 N.E.2d 697, 700 (Ind. Ct. App. 2010) (canine unit summoned only after officer obtained all information needed to write traffic ticket, and canine unit arrived "nearly twenty minutes after [defendant]'s traffic stop could have been completed and almost forty minutes after it began"); *Wilson v. State*, 847 N.E.2d 1064, 1066 (Ind. Ct. App. 2006) (warrant check was completed at 1:58 a.m., warning tickets were written at 2:06 a.m., and canine unit was summoned at 2:15 a.m., only after defendant declined consent to search car). In both cases, this court concluded the canine sniff significantly prolonged the defendants' detention, which, because it was unsupported by reasonable suspicion of criminal activity, violated the Fourth Amendment. *See Wells*, 922 N.E.2d at 700 ("there does not appear to be any serious dispute that the length of [defendant]'s traffic stop was substantially lengthened by the call for the K-9 and subsequent dog sniff"); *Wilson*, 847 N.E.2d at 1067 ("As the warning tickets were written some time before the dog arrived, it is apparent that [the officer] could have completed the traffic stop sooner than he did").

*Id*. at 790-791.

The facts of the present case are distinct from the aforementioned cases. Those cases involved an officer initiating a traffic stop and subsequently calling for a canine

unit to assist and perform a dog sniff. Also, the dog sniffs in those cases were conducted either simultaneously to the traffic violation (by a second officer) or after the traffic stop was completed and the ticket had been issued. In the present case, Officer Jackson did not call a second officer to assist and chose to suspend the traffic stop in order to perform the canine sniff himself. Officer Jackson testified that he postponed the "normal traffic stop" procedure (performing checks on driver license, license plate and outstanding warrants) in order to conduct the canine sniff. Tr. p. 25-26.

The scope of a detention must be strictly tied to and justified by the circumstances which rendered its initiation permissible. *Florida v. Royer*, 460 U.S. 491, 500 (1983) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). The State has the burden to show that any detention was sufficiently limited in scope to its underlying justification. *Id*., 460 U.S. at 500. Once a justifiable stop is made, the scope of the officer's investigation may be broadened beyond the purpose for which the person was stopped only if additional particularized and objective suspicions come to light. *United States v. Finke*, 85 F.3d 1275, 1280 (7th Cir. 1996); *United States v. Kitchell,* 653 F.3d 1206, 1218-19 (10th Cir. 2011), *cert. denied*; *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993). Although additional suspicion would not be required to perform free-air sniff search, *Caballes*, 543 U.S. at 409, suspicion would be required for any additional seizure that the dog sniff caused.

Here, as in *Bush*, the State failed to present sufficient evidence to support a finding "that the duration of the stop in this case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop." *Bush*, 925 N.E.2d at 791 (quoting

7

*Caballes*, 543 U.S. at 408, 125 S.Ct. 834). Assuming that the seizure was lawful in its inception, it appears that, as Gray argues, the stop was sustained solely for the purpose of pursuing a narcotics investigation rather than a traffic violation. The ordinary inquiries incident to a traffic stop were suspended almost immediately, and there is no evidence that Officer Jackson ever wrote Gray a ticket for a traffic violation. Still, the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers involved. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Regardless of the underlying purpose of the seizure, the traffic stop was delayed by the dog sniff. In each of the above-mentioned dog-sniff cases that found the search valid, the duration of the traffic stop was not extended at all by the dog sniff. The dog sniff of Gray's vehicle is more analogous to *Wells* and *Wilson* because there was a separate seizure outside the scope of the traffic stop. As the court in *Wilson* mentioned, "it is apparent that [the officer] could have completed the traffic stop sooner than he did." 847 N.E.2d at 1067. The same is true in this case. The free-air sniff of Gray's vehicle lasted approximately two to six minutes.[1] Even assuming the two minute estimate is accurate, the delay amounts to an increase in the duration of the seizure for purposes outside the scope of the traffic stop. To hold otherwise would fulfill Justice Ginsburg's fears that "every traffic stop could become an occasion to call in the dogs," so long as the dog sniff is performed quickly. *Caballes*, 543 U.S. at 422 (Ginsburg J., dissenting).

---

[1] There was a factual issue regarding the length of the canine sniff. The dispatch report indicated that Officer Jackson initiated the traffic stop at 3:04 a.m. and notified dispatch of the canine alert at 3:10 a.m. Officer Jackson estimated that two minutes elapsed between the time he removed Erik from the car to the time he returned him to the car.

Upon deciding that the dog sniff was not incidental to the traffic stop, we must determine whether Officer Jackson had reasonable suspicion that Gray was engaged in criminal activity so as to justify prolonging Gray's detention. *Bush*, 925 N.E.2d at 791.

"Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." *State v. Schlechty*, 926 N.E.2d 1, 7 (Ind. 2010) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000)). "Thus, a reviewing court must examine the totality of circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Bush*, 925 N.E.2d at 791.

The tip Officer Jackson received from the Tell City police officer was the only purported reason to suspect Gray of criminal activity prior to the dog sniff.

> Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation… A primary focus in the imputed knowledge cases is whether the law enforcement officers initiating the search or arrest, on whose instructions or information the actual searching or arresting officers relied, had information that would provide reasonable suspicion or probable cause to search or arrest the suspect.

*U.S. v. Colon*, 250 F.3d 130, 135-36 (2d Cir. 2001). This "collective knowledge" concept was endorsed by the United States Supreme Court in *U.S. v. Hensley*, 469 U.S. 221, 232–33 (1985). Officer Jackson did not need to know the particulars of the source of the tip to

9

have reasonable suspicion to conduct a free-air sniff. Rather, the question is whether the Tell City police officer would have had reasonable suspicion in the same situation based on the tip information. *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010) ("In order for the collective knowledge doctrine to apply … the officer providing the information—or the agency for which he works—must have facts supporting the level of suspicion required.")

The State offered no evidence as to the original source of the information. The State failed to call the Tell City police officer to testify or even identify that officer by name. Moreover, the tip itself lacked detail, providing only a vague indication that Gray was involved with illegal narcotics. Without more, there is no way to determine whether the officers had sufficient information to meet the reasonable suspicion standard.

Although we found no Indiana cases with similar factual circumstances, there are several such cases among other jurisdictions. In *State v. Dukes*, 630 S.E.2d 847 (Ga. Ct. App. 2006), an anonymous tip to a patrol officer was relayed to the Georgia Drug Task Force, which conducted a search and seizure based on the information. The Court of Appeals of Georgia found that whether the Task Force had reasonable suspicion for the search was determined based on the reliability of the anonymous tip. *Id.* The court acknowledged that there was a "complete absence of evidence about the source of the report," and that it had "no way of knowing whether it came from a concerned citizen, a confidential informant, or an anonymous tipster." *Id.* at 250. As such, the court concluded that the tip was of "unknown reliability" and thus would not provide reasonable suspicion without additional corroborating evidence (essentially treating it as

10

an anonymous tip). *Id. See also State v. Matthews*, 942 A.2d 797 (N.J. Super. Ct. App. Div. 2008) (concluding that a search was unlawful for lack of reasonable suspicion where officers conducted search of vehicle after receiving information from dispatch who had received anonymous tip).

Treating the information Officer Jackson received from the Tell City officer as an anonymous tip, we find that it was insufficient to provide reasonable suspicion. The United States Supreme Court distinguished between tips received from anonymous sources and those received from identified informants. *Florida v. J.L.*, 529 U.S. 266, 270 (2000). Anonymous tips are generally less reliable than tips from known informants and can form the basis for reasonable suspicion only if accompanied by specific indicia of reliability, such as evidence corroborating the accuracy of the tip or additional reasons to suspect criminal activity. *Id.* There was no corroborating evidence in this case which would lend more reliability to the tip. During the stop, Officer Jackson did not notice any suspicious signs or behavior about Gray or her vehicle (*e.g.,* abnormal odors, indicators of impairment, nervousness, furtive movements). Moreover, there were no specific details about the tip which Officer Jackson could have used to verify its reliability. The State offered no reason why it did not call the Tell City police officer or why it could not provide more detailed information regarding the source of the tip.

Without reasonable suspicion, the canine sniff and subsequent search of Gray's vehicle were violations of Gray's Fourth Amendment rights. Accordingly, we affirm the decision of the trial court to suppress the evidence recovered during the search.

The judgment of the trial court is affirmed.

11

BAILEY, J., and MAY, J., concur.