## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 16 2016, 8:18 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| --- | --- |
| Mark K. Leeman | Gregory F. Zoeller |
| Leeman Law Offices | Attorney General of Indiana |
| Logansport, Indiana | |
| | James B. Martin |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Robert Dowell, | February 16, 2016 |
| *Appellant-Defendant,* | Court of Appeals Cause No. 09A02-1504-CR-244 |
| v. | Appeal from the Cass Superior Court |
| State of Indiana, | The Honorable Rick Maughmer, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 09D01-1412-F6-177 |

**Barnes, Judge.**

# Case Summary

Robert Dowell appeals his conviction and sentence for Level 6 possession of methamphetamine. We affirm.

# Issues

The issues before us are:

    I.      whether the traffic stop of the vehicle in which Dowell was a passenger violated the Indiana Constitution;

    II.    whether the ensuing dog sniff of the vehicle and discovery of contraband in the vehicle violated the United States Constitution; and

    III.   whether the trial court abused its discretion in imposing a two-year sentence upon Dowell.

# Facts

On December 28, 2014, Officer Bryce Hall of the Logansport Police Department was on patrol traveling on a road with a posted speed limit of thirty miles per hour. Officer Hall noted that he was traveling at thirty miles per hour based upon his radar-calibrated speedometer and that a vehicle in front of him was pulling away from him, meaning the vehicle was going more than thirty miles per hour. Officer Hall decided to pull the vehicle over for speeding after following it for about one block.

[4]     As Officer Hall approached the vehicle, he noted that there were four individuals inside. Officer Hall then asked the driver, Pedro Centeno, for his license and registration. Centeno, who appeared very nervous, responded that he had a license but did not have it with him; he provided his name and date of birth to Officer Hall to call in to dispatch. Officer Hall noticed that Dowell, who was sitting in the rear passenger-side seat, was videotaping the traffic stop with his cell phone. Before Officer Hall got back to his vehicle to call in Centeno's information, he radioed in a request for a canine officer to join him at the scene. In accordance with his training, Officer Hall requested an additional officer at the scene because he was outnumbered four-to-one.

[5]     While waiting for the canine officer to arrive, Officer Hall radioed in Centeno's information. Deputy John O'Connor of the Cass County Sheriff's Department arrived on the scene with his dog within a few minutes of Officer Hall's request and while Officer Hall was awaiting a response from dispatch. Initially, Officer Hall was informed that there was no one in the Bureau of Motor Vehicle's database matching that information. Officer Hall then began writing a ticket for operating a vehicle without having ever received a license while Deputy O'Connor walked his dog around Centeno's vehicle. Deputy O'Connor's dog alerted on the vehicle while Officer Hall was still writing his ticket and attempting to gain further information on Centeno from dispatch. Officer Hall decided to impound the vehicle.

[6]     Officer Hall then stopped writing the ticket and assisted Deputy O'Connor in searching the vehicle. The officers found several baggies containing a green

leafy substance near where Dowell was sitting. Officer Hall also found a glass pipe under the front passenger seat, directly in front of where Dowell had been sitting. Dowell told Officer Hall that someone had given him "something" to hide, but he did not specify what. Tr. p. 186. Officer Hall then decided to arrest Dowell. While Dowell was in the back of Officer Hall's vehicle, dispatch informed Officer Hall that they had located Centeno's information after all and that he had a suspended license. Officer Hall then gave Centeno a ticket for driving with a suspended license and transported Dowell to jail. At the jail, a search of his clothing uncovered a bag of white powder that testing revealed to be methamphetamine.

[7] The State charged Dowell with Level 6 felony possession of methamphetamine, Class B misdemeanor possession of marijuana, and Class A infraction possession of paraphernalia. Dowell filed a motion to suppress all of the evidence in the case, alleging it was discovered as the result of an illegal search and seizure. The trial court denied the motion, and the case proceeded to jury trial, after dismissal of the marijuana charge. Dowell was found guilty and convicted of possession of methamphetamine and not guilty of possession of paraphernalia.

[8] At the sentencing hearing, Dowell requested a partially-suspended sentence so he could help care for his teenage daughter. After the hearing, the trial court entered the following sentencing statement:

> After listening to what's been said here today and reviewing the Pre-Sentence Report which I agree was detailed and I appreciate

that. I am going to find the defendant is an aggravating factor I neglect . . . I am not able to find mitigating factors. I think and aggravated sentence is appropriate. Mr. Dowell, therefore I'm going to sentence you to a period of incarceration for 2 years. That time to be served in the Cass County Jail and I'm going to say to you that you need to take advantage of what programs are available in the Cass County Jail.

Tr. p. 316. Dowell now appeals.

# Analysis

### I. Stop of Vehicle

Dowell first contends that the stop of Centeno's vehicle was illegal under the Indiana Constitution.[1] When, as here, a motion to suppress is denied and a defendant proceeds to trial, the validity of the ruling on the motion to suppress is no longer viable. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). Instead, we review the admission of the evidence at trial for an abuse of discretion. *Id.* at 259-60. We will reverse the admission of evidence only if it is clearly against the logic and effect of the facts and circumstances before the trial court and if an error affects the defendant's substantial rights. *Id.* at 260.

While Fourth Amendment analysis focuses on a criminal defendant's expectation of privacy, under Article 1, Section 11 of the Indiana Constitution, the focus is upon the actions of the police officer and whether his or her actions

---

[1] Dowell makes no argument under the Fourth Amendment on this point.

were reasonable under the totality of the circumstances. *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). This analysis requires us to balance: "'1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)). The State has the burden of proving that police intrusion into privacy was reasonable under the totality of the circumstances. *Id.* "It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." *Id.*

[11] Dowell takes issues with Officer Hall's ability to determine that Centeno was speeding, claiming he did not provide sufficient detail as to Centeno's alleged speed and noting Officer Hall did not actually write a ticket for speeding. This case is readily distinguishable from *Turner v. State*, 862 N.E.2d 695 (Ind. Ct. App. 2007), upon which Dowell relies. In that case, an officer, while stopped at a red light, visually estimated that a defendant was speeding, but the officer was unsure what the speed limit was and admitted that the stop was pretextual. We held that this stop was unreasonable under the Indiana Constitution. *Turner*, 862 N.E.2d at 700. Here, Officer Hall's testimony was quite clear as to how he determined that Centeno was driving above the posted speed limit. Centeno's vehicle was pulling away from Officer Hall, despite Officer Hall driving thirty miles per hour according to his radar-calibrated speedometer. There is sufficient evidence that Officer Hall observed Centeno committing the traffic

offense of speeding so as to justify pulling him over. Additionally, continuation of the stop to investigate Centeno's license status, particularly upon his failure to produce a license to Officer Hall, was permissible. *See State v. Morris*, 732 N.E.2d 224, 228 (Ind. Ct. App. 2000) (holding that officer was permitted to verify driver's license status following stop for observed violation of seatbelt law).

Dowell also takes issue with the fact that Officer Hall never in fact wrote Centeno a ticket for speeding. We find this to be irrelevant. Upon learning first that Centeno was not in the BMV's database, and later that he did have a license but it was suspended, Officer Hall's focus understandably shifted to ticketing Centeno for those offenses, not speeding. Particularly under these circumstances, we cannot say that Officer Hall's failure to write Centeno a ticket for speeding made the initial stop for that offense unreasonable.

## II. Dog Sniff of Vehicle

Next, Dowell asserts that the dog sniff of the vehicle extended his seizure beyond permissible constitutional bounds.[2] A reasonable narcotics dog sweep is not a search for the purposes of the Fourth Amendment to the United States

---

[2] The State asserts that Dowell lacks standing to raise this issue because he had no possessory interest in the vehicle. It acknowledges that it did not argue lack of standing before the trial court and that current precedent from our supreme court holds that the State waives lack of standing on appeal if it does not raise it before the trial court, but urges reconsideration of that precedent. *See Everroad v. State*, 590 N.E.2d 567, 569 (Ind. 1992). We cannot overrule decisions of our supreme court. *See Horn v. Hendrickson*, 824 N.E.2d 690, 695 (Ind. Ct. App. 2005). And, although we are free to criticize such decisions, we do not do so here. Additionally, we note that Dowell's argument focuses on the length of the traffic stop, including the dog sniff, which impacted him personally.

Constitution.[3] *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). "However, such a sweep is an unreasonable investigatory detention if the motorist is held for longer than necessary to complete the officer's work related to the traffic violation and the officer lacks reasonable suspicion that the motorist is engaged in criminal activity." *Id.* The State must prove "'that the duration of the stop in this case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop.'" *Bush v. State*, 925 N.E.2d 787, 791 (Ind. Ct. App. 2010) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408, 125 S. Ct. 834, 837 (2005)). Although the constitutionality of a traffic stop does not depend upon the actual motivations of individual officers, a traffic stop cannot be delayed by a dog sniff. *State v. Gray*, 997 N.E.2d 1147, 1152 (Ind. Ct. App. 2013), *trans. denied*. Indeed, the United States Supreme Court re-emphasized in last year's term that a police officer cannot "incremental[ly]" lengthen a traffic stop by even a de minimis amount beyond the time needed to complete the mission of the stop. *Rodriguez v. United States*, -- U.S. --, 135 S. Ct. 1609, 1616 (2015). Tasks that an officer may undertake related to the traffic stop typically "involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.*, -- U.S. at --, 135 S. Ct. at 1615.

---

[3] Unlike with the initial stop, Dowell focuses his argument on this point entirely upon the Fourth Amendment.

In *Rodriguez*, the traffic stop was improperly delayed where the dog sniff occurred immediately after the officer had completed the original purpose of the stop by giving a warning ticket to the driver. *Id.*, -- U.S. at --, 135 S. Ct. at 1616. In *Bush*, we held that the traffic stop was improperly delayed by a dog sniff where the sniff did not occur until after a vehicle passenger had been arrested and the purpose of the stop was complete as to the driver-defendant. *Id.* at 791. In *Gray*, the officer who made the initial stop also had a dog, and the officer suspended the normal activities associated with a traffic stop to conduct a dog sniff, which we held was impermissible because it clearly delayed the traffic stop beyond the confines of the observed traffic violation. *Gray*, 997 N.E.2d at 1152; *see also Wells v. State*, 922 N.E.2d 697, 700 (Ind. Ct. App. 2010) (stop impermissibly lengthened when canine unit was not summoned until after stopping officer obtained all information needed to write ticket and canine did not arrive until nearly twenty minutes after stop could have ended), *trans. denied*; *Wilson v. State*, 847 N.E.2d 1064, 1066 (Ind. Ct. App. 2006) (stop impermissibly lengthened where canine unit was not summoned until nine minutes after warning tickets were written and after defendant had declined consent to search car).

By contrast, in *State v. Gibson*, 886 N.E.2d 639, 642 n.4 (Ind. Ct. App. 2008), a dog sniff was constitutionally acceptable when it occurred simultaneously with the stopping officer's writing of a ticket. Similarly, in *Myers v. State*, 839 N.E.2d 1146, 1149-50 (Ind. 2005), there was no impermissible lengthening of a traffic stop where the canine search began thirteen minutes after the stop began and

occurred simultaneously with the stopping officer explaining the traffic citation to the defendant; *see also United States v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005) (holding dog sniff was proper where canine arrived on scene within five minutes of stop and while stopping officer was in process of giving defendant traffic ticket).

[16] This case is much closer to *Gibson*, *Myers*, and *Carpenter* than *Rodriguez*, *Bush*, *Gray*, *Wells*, and *Wilson*. Although the amount of time it took Deputy O'Connor and his dog to arrive on the scene is not precisely quantified, Officer Hall testified that he arrived within a few minutes of the request for a canine unit. Officer Hall made that request after having asked Centeno for his license and registration but before he radioed dispatch for information about Centeno, and before Officer Hall had even returned to his vehicle. Officer Hall also requested additional assistance on the scene not just for purposes of conducting a dog sniff, but also because he was outnumbered four-to-one by the vehicle's occupants. Deputy O'Connor arrived on the scene and began his dog sniff while Officer Hall was attempting to obtain Centeno's license information, and the dog alerted while Officer Hall was in the midst of writing a citation for Centeno not having a license. At that point, there was probable cause to conduct a warrantless search of the vehicle. *State v. Hobbs*, 933 N.E.2d 1281, 1286-87 (Ind. 2010). In sum, the State sufficiently established that the dog sniff of the vehicle did not lengthen the traffic stop beyond the time required for the ordinary investigation of a traffic offense, in accordance with *Rodriguez*. As such, the sniff and resulting discovery of possible contraband and arrest of

Dowell for possession of that contraband did not violate the Fourth Amendment.

### III. Sentence

[17] Dowell's final argument is that the trial court abused its discretion in sentencing him. We engage in a four-step process when evaluating a sentence under the current "advisory" sentencing scheme. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007). First, the trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." *Id.* Second, the reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. *Id.* Third, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. *Id.* Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). *Id.* Even if a trial court abuses its discretion by not issuing a reasonably detailed sentencing statement, we may choose to review the appropriateness of a sentence under Indiana Appellate Rule 7(B) instead of remanding to the trial court. *See Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007).

[18] Dowell contends that the trial court's sentencing statement lacked "reasonably detailed reasons or circumstances" for the two-year sentence it imposed. *See Anglemyer*, 868 N.E.2d at 491. We tend to agree that the sentencing statement here, which merely referred to "the defendant" as an aggravating circumstance and mentioned no mitigating circumstances, lacked specificity. Tr. p. 316.

Nevertheless, we decline to remand for the trial court to issue a new sentencing statement and elect to review the appropriateness of Dowell's sentence in light of the record.

[19] Under Rule 7(B), we may revise a sentence if we deem it to be inappropriate in light of the defendant's character and the nature of the offense. The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[20] There is nothing particularly egregious about Dowell's offense. However, his character is sorely lacking. He has felony convictions for theft, burglary, escape, battery resulting in serious bodily injury, and possession of methamphetamine. He also has misdemeanor convictions for operating a vehicle with a BAC above .10%, battery, invasion of privacy, public

intoxication, and twice for driving while suspended. He violated probation on three occasions in relation to his conviction for battery resulting in serious bodily injury, and his probation was terminated unsuccessfully. Dowell has had near-continuous involvement with the criminal justice system, either imprisoned or committing new crimes, since turning eighteen in 1990. Several of those crimes have been related to substance abuse, as is the current offense. That criminal history alone is sufficient to warrant imposition of an executed two-year sentence, six months under the maximum for a Level 6 felony. *See* Ind. Code § 35-50-2-7(b).

## Conclusion

[21] The trial court did not err in admitting evidence recovered from Dowell following the stop and dog sniff of the vehicle in which he was a passenger. Additionally, although the trial court's sentencing statement could have been more detailed, we conclude that Dowell's sentence of two years executed is not inappropriate. We affirm.

Robb, J., and Altice, J., concur.